## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DEREK N. JARVIS,**
[10578 Venetia Mills Circle, Silver Spring, MD 20901]
**LASHAWN D. LEWIS, and**
[8700 Brazke Court, Clinton, MD 20735]
**LACREASHA A. KENNEDY-JARVIS,**
[3040 Brightseat Road, Lanham, MD 20706]
**[Estate Beneficiaries]**

       *Plaintiffs,*

v.

**DARRYL   S.   PARKER,   Esq.**   and
[1822 11th Street, NW, Washington, DC 20001]
**[Removed Personal Representative]**
**C. HOPE BROWN, Esq.,**
[4545 42nd Street, NW, #303, Washington, DC 20001]
**[Successor Personal Representative]**

       *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

 Judge Colleen Kollar-Kotelly

 Case No. 13-cv-350

 **Diversity**
 **Breach of Fiduciary Duty**
 **Civil Conversion**
 **Damages**
 **Jury Demand**

## COMPLAINT AND JURY DEMAND

  Estate beneficiaries, Derek N. Jarvis, LaShawn D. Lewis and LaCreasha A. Kennedy-Jarvis, by their undersigned attorney, James T. Zeas, Esq., as and for this complaint herein allege as follows:

### PRELIMINARY STATEMENT

  1. This is an action seeking exorbitant damages in the amount of $504,222.50, plus pre and post-judgment interest, among other damages, to an Estate and its beneficiaries arising out of various breaches of fiduciary duties, some previously adjudged, and civil conversion by a removed Personal Representative, Darrel S. Parker, Esq. ("Parker").

  2. Plaintiffs also seek damages arising out of various breaches of fiduciary duties of successor Personal Representative C. Hope Brown, Esq. ("Brown") in the amount of $72,609 plus pre and post judgment interest.

3.     For certain damages Plaintiffs seek that Defendants be held jointly and severally liable.

## JURISDICTION

### The Parties

4.     Plaintiff, Derek N. Jarvis is the surviving son and beneficiary of his deceased father, James P. Jarvis, the decedent of the Estate of James P. Jarvis and is a resident of the state of Maryland residing at 10578 Venetia Mills Circle, Silver Spring, Maryland 20901.

5.     Plaintiff, LaShawn D. Lewis is the surviving daughter and beneficiary of her deceased father, James P. Jarvis, the decedent of the Estate of James P. Jarvis and is a resident of the state of Maryland residing at 8700 Brazke Court, Clinton, Maryland 20735.

6.     Plaintiff, LaCreasha Kennedy-Jarvis is the surviving wife and beneficiary of her deceased husband, James P. Jarvis, the decedent of the Estate of James P. Jarvis and is a resident of the state of Maryland residing at 3040 Brightseat Road, Lanham, Maryland 20706.

7.     Defendant, Darryl S. Parker, Esq. is the first personal representative to the Estate of James P. Jarvis and is a resident of the District of Columbia.  Mr. Parker is, upon information and belief, an owner of the law firm Roundtree Knox Hunter & Parker LLP located at 1822 11th Street, NW, Washington, D.C. 20001 which does business in the District of Columbia where Mr. Parker practices law almost exclusively.

8.     Defendant, C. Hope Brown, Esq., is the second and successor personal representative to Defendant Parker to the Estate of James P. Jarvis and is, upon information and belief, a resident of the District of Columbia or Virginia.  C. Hope Brown, upon information and belief, is a sole practitioner located at 4545 42nd Street, NW, #303, Washington, D.C. 20016 who exclusively practices law in the District of Columbia.

9.     There is complete diversity of citizenship between all plaintiffs and all defendants given that they reside in and are citizens of different states.

10.     This Court has subject matter jurisdiction over this action and jurisdiction is proper before the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1332(a)(1) in that it is an action where there is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, well exceeds the sum or value of seventy-five thousand dollars $75,000.00.

11.     This Court has personal jurisdiction over Defendants Parker and Brown because their law firms are authorized to do business and are doing business in the District of Columbia.

## Venue

12.     Venue is proper under 28 U.S.C. § 1391(a)(1) in that all Defendants reside in the District of Columbia, as that term is defined in § 1391(c) and pursuant to § 1391(a)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.

13.     This Court is the sole district court located within the District of Columbia and all events, specifically, the misadministration of the Estate of James P. Jarvis by Defendant Parker and the theft of the decedent's worldly goods all occurred within the District of Columbia.

14.     Further, all Defendants reside within the District of Columbia, therefore, no hardship will be suffered by them by litigating in this Court.

## FACTS COMMON TO ALL COUNTS

15.     Decedent James P. Jarvis passed away on June 3, 2003.

16.     Upon information and belief, Greer M. Burriss ("Burriss"), with the assistance of various co-employees, rented a truck and removed almost all of the decedent's personal property, including recently purchased gold and diamond jewelry, from his abode just days after his death.

17.     Shortly after his death, Burriss forged the signature of the decedent, James P. Jarvis, on the title to his then new custom Cadillac Deville purchased by the decedent only 9 months prior to his death, specifically September 13, 2002, for $56,710.00.  Exhibit A.

18.     Burriss opened the Estate of James P. Jarvis (the "Estate") as a Small Estate pursuant to D.C. Statute § 20-351 in the Superior Court for the District of Columbia, Probate Division and sought to be appointed its Special Administrator.

19.     The Plaintiffs filed a Joint Opposition Motion alerting the Superior Court for the District of Columbia, Probate Division, that Burriss had undervalued the Estate and had stolen items from the decedent's abode shortly after his death.  Exhibit B.

20.     Burriss had misrepresented on the Small Estate inventory that the value of the Estate was "$40,000.00 or less" - when a cursory review of the decedent's bank account balance at the time clearly evinced an excess of $100,000 in cash.

21.     By order of Judge Eugene Hamilton dated May 24, 2004, Burriss was **precluded** and **barred** from assuming the Special Administrator position for a Small Estate due to her adjudged misrepresentation and fraud with respect to the true value of the Estate.  Exhibit C.

22.     Instead, by that same order, the Superior Court for the District of Columbia, Probate Division appointed Darryl S. Parker, Esq. to serve as the very first personal representative to the Estate.  Exhibit C.

23.     Burriss never sought a fiduciary bond because she was never granted the right to assume a fiduciary position with respect to the Estate.

24.     Defendant Parker was ordered, did seek and ultimately secured a $100,000 fiduciary bond from State Farm Fire and Casualty Company covering the Estate for any loss whether accidental or intentional caused by Defendant Parker.  Exhibit D.

25.     Defendant Parker was told by Plaintiffs that Burriss had taken almost all of the decedent's personal property, including but not limited to a then new custom Cadillac Deville and valuable gold and diamond jewelry.

26.     At first, Defendant Parker filed a Motion to Show Cause against Burriss seeking among other things the decedent's $56,710.00 custom Cadillac Deville. Exhibit E.

### The Then New $56,710 Custom Cadillac DeVille

27.     Then, inexplicably, Defendant Parker *settled* with Burriss, in the face of the Superior Court's finding of her misrepresentation as to the true value of the Estate and precluding her from assuming a fiduciary position with respect to the Estate, Defendant Parker permitted Burriss to take the custom Cadillac based on the mere **verbal** representation by Burriss that the Cadillac had been "gifted" to her by the decedent just a few weeks prior to the decedent's death.

28.     Defendant Parker did not prudently or diligently research the Maryland Motor Vehicles Administration ("Maryland M.V.A.") as prudence would dictate to confirm or rebut Burriss' representation of the "gifted" Cadillac Deville.

29.     Indeed, Plaintiff's counsel telephoned the Maryland M.V.A. and was summarily provided with a copy of a Bill of Sale related to the custom Cadillac Deville during Year-2005 by a Maryland M.V.A. administrator. Exhibit F.

30.     First, Burriss claimed the custom Cadillac was "gifted" to her, not "sold" to her by the decedent.

31.     Second, the Bill of Sale contains a forged signature of the decedent looking nothing like the decedent's signature. Exhibit F.

32.     Third, the alleged signature of the decedent is allegedly attested to by a notary eight (8) days **after** the decedent's demise, specifically June 11, 2003 when the decedent had died on June 3, 2003; an impossibility. Exhibit F.

33.     Fourth, the reason or reasons why the automobile was purchased for $1,500 -- well below its fair market value -- was/were not disclosed as required by the express provisions found on the Bill of Sale form. Exhibit F.

34.     Fifth, the notarial stamp present under both signature lines of the decedent and Burris reading, "Grayson C. Wilbur" was never affixed by the notary Wilbur, who claims that he lost his notary stamp in an office move during that time in a letter to plaintiffs' counsel. Exhibits F & G.

35.     Finally, there is no signature of the notary or a date of when the notarial commission would expire listed on the bogus Bill of Sale. Exhibit F.

36.     As Personal Representative of the Jarvis Estate carrying a $100,000 bond covering all assets of the Estate, Defendant Parker and/or Brown should be held directly liable to Plaintiffs for the diminution in value of the Estate due to the loss of the un-marshaled custom Cadillac Deville in question valuing on the order of $56,710.00 (less 9 months depreciation) as of the date of the decedent's demise.

37.     Indeed, Burris traded the spoils of her theft, the custom Cadillac Deville she stole, for a new large black Cadillac Escalade SUV to further conceal her theft from the Estate. Exhibit H.

### The Then Recently Purchased $5,299 in Gold and Diamond Jewelry

38.     In addition, all of the decedent's valuable personal property was taken from his abode by Burriss just a few days after the decedent's death.

39.     Review of the decedent's bank records reflects that the decedent (whom had just inherited money from his mother's estate, the Estate of Rose Walker located in New Jersey) had purchased not only the custom Cadillac Deville but thousands of dollars in gold and diamond jewelry totaling approximately $5,299.00 just a few months prior to his demise. Exhibit I.

40.     Shortly after the decedent's death, but before Burriss gained entry to the decedent's apartment to rape, pillage and plunder it, an Officer of the District of Columbia Police, Officer Eugene Mackey, was present in the decedent's abode to verify the decedent's death and while there personally eye-witnessed the jewelry containing gold and diamonds.

41.     The Plaintiffs discovered, through their own prudence and diligence, not only the existence and location of Officer Mackey but a pawn shop with pawn shop receipts in the name of and executed by Burriss, executed just weeks after the decedent's death, wherein, it was revealed that she had sold the decedent's jewelry to Top Dollar Pawnbrokers in exchange for cash. Exhibit J.

42.     It is traditional and common practice in the pawn industry that $1/10^{th}$ or less of the value of an item is paid to an individual pawning an item.

43.     Due to Defendant Parker's lack of prudence and diligence in blindly *settling* with Burriss over Plaintiffs' objections, he and/or Defendant Brown should be held directly liable to Plaintiffs for the diminution in value to the Jarvis Estate for all $5,299.00 in jewelry purchased by the decedent just months prior to his death.

**Settlement Induced by Fraud and Resulting Consent Order**

44.     Rather than requiring Burriss to produce the custom Cadillac Deville and the jewelry, Defendant Parker *settled* with her based on her mere **verbal** representations and in turn literally gave her the Cadillac Deville and jewelry and even paying Burriss' attorney Cheryl

Chapman Henderson, Esq. $2,410.00 without any concern for the inheritance rights of the remaining beneficiaries to the Estate. Exhibit K.

45.    Worse, Defendant Parker had the Probate Judge then hearing the matter enter a Consent Order judicially ratifying the settlement. Exhibit L.

46.    Given that the Consent Order was entered by the Probate Court by virtue of Burriss' fraud and misrepresentation in securing the settlement, upon which the Consent Order is based, that very settlement should be justly unraveled and held void due to it having been induced by the fraud of Burriss.

47.    Moreover, the Consent Order should be vacated and held void *ab initio* by this honorable federal Court.

48.    Indeed, the Plaintiffs were not permitted to litigate the diminution in value of the Estate as a result of the loss of the custom Cadillac Deville and recently purchased jewelry before the Probate Court at trial because of the existence of the Consent Order.

49.    In a *per curiam* opinion entered April 30, 2012, the District of Columbia Court of Appeals held that the Consent Order should be justly vacated by Successor Personal Representative Defendant Brown. Exhibit M. [For the Court's convenience, Plaintiffs provide their Opening Brief, Reply Brief and Post-Oral Argument brief as Exhibits X, Y & Z].

50.    Had Defendant Brown sought to vacate and hold void the Consent Order given that its execution was obviously fraudulently induced given Burriss' bogus Bill of Sale and pawn receipts, Defendant Brown could have sought recovery of the value of the custom Cadillac Deville, the jewelry and the payment to Burriss' counsel totaling approximately $64,419.

### Other Proven & Previously Adjudged Derelictions
### Given the Consent Order's Preclusive Affect

51.     The existence of the Consent Order required Plaintiffs' counsel to proceed with

finding and proving derelictions of Defendant Parker's fiduciary duties to the Estate and its

beneficiaries other than the most egregious ones in giving the custom Cadillac and jewelry away

to a previously adjudged fraud by way of a fraudulently induced and not diligently investigated

*settlement.*

52.     Parker was not prudent or diligent in his administration of the Estate.

53.     Indeed, at almost every turn he miss-administered the Jarvis Estate.

54.     Indeed, the Superior Court for the District of Columbia, by opinion order of Judge

Rhonda Reid-Winston found that Defendant Parker had breached 5 separate and distinct

fiduciary duties to the Estate and its beneficiaries ultimately removing Defendant Parker from

the Personal Representative position after 4 years of litigation on March 10, 2009.  Exhibit N.

### Judicially Adjudged 5 Breaches of Defendant Parker's Fiduciary Duties Resulting
### in $303,350.83 in Damages to the Estate and Its Beneficiaries

55.     These five (5) previously adjudged breaches of Defendant Parker's fiduciary

duties to the Estate and its beneficiaries as held by the Probate Court were as follows:

(i)     Failure of Defendant Parker to diligently investigate and secure the

decedent's second older 1995 Cadillac El Dorado, held by a mechanic, resulting in the

diminution in value of the Estate by $7,300.00 (Defendant Parker's very own Show Cause

Motion reflects this to be the average retail value of the automobile at the relevant time).  Exhibit

N at p. 25.

(ii)     Failure of Defendant Parker to diligently make inquiry and investigate the

decedent's inheritance from the decedent's father's Estate, the Estate of Charles Jarvis located in

Maryland, resulting in the diminution in value of the Estate by $1,975.83 and (iii) the decedent's mother's estate in New Jersey, the Estate of Rose Walker ("Walker Estate"), resulting in the diminution in value of the Jarvis Estate by approximately $291,667.00 given a property of the decedent's mother located in Georgetown, South Carolina that had then sold for $875,000.00 (of which the instant decedent was to inherit 1/3rd) which was omitted from the requisite Walker Estate inventory of assets of her estate by her nephew personal representative. Exhibit N at p. 25.

(iv)    Failure of Defendant Parker to diligently investigate post-death electronic withdrawals from the decedent's bank account, those withdrawals not withdrawn by any of the decedent's creditors, resulting in the diminution in value of the Estate by $2,398.00. Exhibit N at p. 25.

(v)    Failure of Defendant Parker to diligently ensure that a $618.00 payroll check of the decedent was not stale and did not bounce, resulting in the diminution in value of the Estate by a $10.00 bounced check fee. Exhibit N at p. 25.

56.    The total diminution in value to the Estate is a sum certain: **$303,350.83**.

57.    Plaintiffs are due not only the $303,350.83 in damages referenced above but also 9% interest per annum from the date of decedent's death on these amounts.

58.    Plaintiffs are also owed the return of Estate monthly fiduciary bond premiums due to the 10 year delay in the prolonged removal process and the tardy closing of the Estate valuing approximately $5,000 running.

59.    Even though the Probate Court removed Defendant Parker for 5 derelictions of duty, it *declined* to award the plaintiffs *any damages* with respect to their removal action, including but not limited to the amounts referenced immediately above as found in its March 10,

2009 opinion order reasoning that *only a successor Personal Representative had standing to seek recovery of these damages.*

60.     It was argued by Defendant Parker and his defense counsel at trial that only a successor Personal Representative had standing to maintain an action seeking recovery for diminution in value of an estate due to damage and loss caused by a removed Personal Representative's derelictions and that the beneficiaries had no such standing.

61.     The Court of Appeals for the District of Columbia disagreed with Probate Judge Rhonda Reid-Winston and Defendant's argument, however, issuing a *per curiam* decision on April 30, 2012 specifically holding, **"a personal representative is 'directly liable' to interested persons if he breaches his fiduciary duty of care."** Exhibit M.

62.     In that very same decision, the Court of Appeals for the District of Columbia stated further that the beneficiaries themselves had the standing to pursue the value that the Estate had been diminished by Defendant Parker's derelictions not solely the first Successor Personal Representative Brown. Exhibit M.

63.     Rather than return to the Superior Court where Defendant Parker is well-known, is a member of various committees and has been practicing for over thirty (30) years, the Plaintiffs seek their remedy at law and/or in equity for damages here on neutral territory in federal court.

64.     An example of likely favoritism and bias toward Defendant Parker by the local Probate Court, the Plaintiffs' removal action pursuant to the express language of D.C. Statute § 526(b) should have been swift taking no more than 3 or so months, i.e., "within a *reasonable* time," however, the Plaintiffs' removal action was dragged on by the Probate Court for five (5)

years due to an inappropriate genesis order dated May 5, 2005 entered by Judge Wertheim requiring a full-blown trial rather than a simple evidentiary removal hearing. Exhibits O & P.

65.   Similarly, during Year-2005 the Plaintiffs filed a Rule 60 Motion Due to Newly Discovered Evidence of Fraud to Vacate the Consent Order that precluded them from suing Burriss and Parker for loss of the custom Cadillac and jewelry but the Probate Division denied the Motion based on ruling that only the Personal Representative had standing to seek to vacate the Consent Order not the Estate beneficiaries.

66.   Given the abundant evidence found in the Plaintiffs' Rule 60 Motion including Burriss' bogus Bill of Sale and Pawn Receipts, Defendant Parker should have prudently sought that the Consent Order was vacated himself.

67.   Indeed, Probate Judge Lopez should have vacated the Consent Order *sua sponte* in the face of such evidence of Burriss' fraud.

68.   Defendant Parker instead chose to hide behind the Consent Order, rather than seek vacating it, for fear that he may be held liable for the value of the loss.

69.   Pursuant to *In re: Estate of Starr*, 443 A.2d 533, 536 (D.C. App. Ct. 1982), it would seem that not only a Personal Representative to an Estate has standing to file a Rule 60 Motion, but so too do interested party beneficiaries to an Estate, if as held in *Starr* a mere third-party vendor does. Exhibit Q.

70.   Further, the fact that the Appellate Court recently ruled that the beneficiaries had standing to pursue diminishment in value to the Estate resulting from Defendant Parker's 5 derelictions of duty, this would seem to bolster the argument that the Plaintiffs have the standing to seek that the Consent Order be vacated, due to evidence of its fraudulent inducement, to pursue the further diminution in value to the Estate for loss of the custom Cadillac and jewelry.

71.     Indeed, Defendant Parker was derelict in *settling* with Burriss based on her verbal representations in the first place, Burriss being a previously adjudged fraud by the Probate Court itself, and compounded his dereliction through seeking and obtaining judicial ratification of that settlement resulting in the tainted Consent Order.

72.     Appellate Judge Michael William Farrell said it best during Appellate oral argument held December 6, 2011, to return to the D.C. Probate Court would likely be for the Plaintiffs "to face a whipsaw" of their legal rights to recovery of damages for diminution in value to the Estate.

### Removal of First Successor Personal Representative Defendant Brown

73.     Subsequent to the removal finding based on five (5) separate breaches of his fiduciary duties, the Superior Court for the District of Columbia, Probate Division, rather than appointing Plaintiffs' counsel as successor Personal Representative (as desired and requested by the beneficiary Plaintiffs) the court chose instead to appoint a solo practitioner Brown.

74.     Again showing bias in favor of Defendant Parker, this *sua sponte* decision of the Probate Court is completely at odds with most jurisdictions which leaves the choice of Personal Representative up to the beneficiaries of an Estate with court intervention surrounding their choice rare.

75.     Had Plaintiffs' counsel assumed the position of successor Personal Representative, he would have sought vacating the Consent Order over 3 years ago.

76.     Successor Personal Representative Brown has voiced her opposition both telephonically and via e-mail with respect to seeking to vacate the Consent Order based on the fraudulent inducement of Burriss that would expose her colleague Defendant Parker to liability. Exhibit R.

77.     Worse, when Plaintiffs' appealed the Probate Court's curious failure to grant any monetary damages for the Plaintiffs against Defendant Parker with respect to each breach of fiduciary duty it had found, Defendant Brown stated "your appeal has no merit." Exhibit R.

78.     Defendant Brown's legal opinion, notwithstanding, the Appellate Court held in favor of Plaintiffs' position.

79.     Given that it is the duty of a Personal Representative to seek out and marshal all assets to an Estate with prudence and diligence, Defendant Brown has breached D.C. Statute § 526 by failing to seek that the Consent Order be vacated.

80.     Further, Defendant Brown has breached D.C. Statutes §§ 721 & 526(a)(5) by failing to have kept the beneficiaries and their counsel apprised of regular Estate accountings, thereby, precluding Plaintiffs from objecting to payments made by Defendant Brown that would have been shown in the accounts.

81.     As such, a court has no discretion but must remove a Personal Representative who has violated the statute. D.C. Statute § 526(a).

82.     Pursuant to the Appellate Court's prior ruling, Defendant Brown must be held "directly liable" to Plaintiffs for approximately $11,000 remaining in the Estate Wachovia bank account as of *circa* December 2009 when Defendant Brown assumed office.

### Conversion of $38,705.87 in Estate Cash In the Absence of Court Order Prior to Withdrawal Used to Fund Failed Removal Defense

83.     Defendant Parker converted for his own use $38,705.87 of Estate cash in its bank account to fund his failed defense while a mere D.C. Statute § 20-533 Special Administrator with only the power to preserve Estate assets during the litigation seeking his removal. Exhibit T.

14

84.    As a § 533 Special Administrator, Defendant Parker did not have the powers of a full-fledged Personal Representative with the ability to fund his own removal defense using Estate assets without *prior* court permission.

85.    D.C. Statute § 20-526(b) is clear, "the Personal Representative [being sued for removal] may exercise only the powers of Special Administrator as provided by Section 533."

86.    Defendant Parker did <u>not</u> obtain a court order *prior* to removing these funds from the Estate bank account.

87.    Pursuant to D.C. Statute § 20-533, a court order is required *prior to* taking any funds from the Estate bank account in defending a removal action.

88.    At the time of filing of the removal litigation, the Estate bank account only had $42,000, therefore, the $38,705.87 (plus $17,146.80 in Parker's administration fees in the section below) constituted **132.9%** of the entire value of the remaining Estate.

89.    The fact that a Judge *subsequently* attempted to right Parker's wrong by ordering that the already removed funds was proper after-the-fact does not comply D.C. Statutes §§ 20-526 & 20-533 or excuse Defendant Parker's breach thereof.

90.    Further, not only was Defendant Parker's defense a failure, it was a tumultuous failure evincing that the defense was not in "good faith" or "with just cause."

91.    Defendant Parker was not found to have breached only a single fiduciary duty to the Estate, which would have required his non-discretionary removal pursuant to D.C. Statute § 20-526, but was found to have violated five (5) separate and distinct fiduciary duties.

92.    For a Personal Representative who has been removed for not 1 but 5 breaches of fiduciary duties, not to mention those fiduciary duties that could have been litigated had the

Consent Order been vacated by Defendant Brown, to be able to take over 100% of the remaining Estate in that failed defense abandons all logic, is completely unjust and leads to an absurd result.

93.     Plaintiffs request return of all or substantially all of the $38,705.87 in cash, over 100% of the entire remaining Estate at the time of the taking, that Defendant Parker withdrew from the Estate bank account without proper *prior* court order pursuant to D.C. Statutes §§ 20-526 & 20-533.

### Return of the $17,146.80 Awarded to Defendant Parker in Attorney Fees for His Misadministration of the Estate

94.     Plaintiffs filed a removal petition against Defendant Parker during Year-2005.

95.     The removal action for evidentiary hearing was dismissed without prejudice for re-filing as a verified complaint requiring a full-blown trial pursuant to Judge Wertheim's May 5, 2005 genesis order.

96.     After the filing of the complaint by all heirs to the Estate and their counsel, Defendant Parker, while litigation was pending against him and his demotion to Special Administrator with only the power to preserve Estate assets, with absolutely no notice to the beneficiaries as required pursuant to D.C. Statute § 20-721 or without *prior* court order pursuant to D.C. Statute § 20-533, withdrew $6,277.50 from the Estate bank account for his legal services related to the Estate during December 2005. Exhibit U.

97.     Worse, after 5 years of litigation and a finding of 5 separate breaches of his fiduciary duties to the Estate and its beneficiaries, Defendant Parker sought and was awarded another $10,869.30 for legal fees related to his "administration" (more appropriately characterized as miss-administration) of the Estate.

98.     Worse still, some of these funds were to compensate Defendant Parker for defending himself in bad faith and without just cause against Plaintiffs' removal action violating D.C. Statute § 20-752 & *Estate of Bernstein*. Exhibits V & W.

99.     Absurdly, not only were Plaintiffs not compensated for any diminution in value to the Estate by the trial court for Defendant Parker's 5 separate breaches of his fiduciary duties, but to add insult to injury Plaintiffs were required to relinquish tens of thousands of dollars, specifically, $55,852.67 (over 132.9 % of the remaining Estate at the time the removal suit was filed) to Defendant Parker and his counsel for their legal fees in their failed removal defense.

### Payment of the $65,000 in Legal Fees to Plaintiffs' Counsel in Pursuing Estate Assets as Monetary Sanction Against Defendant Parker

100.    Plaintiffs' counsel is a close friend of one of the beneficiaries.

101.    When told of the Estate and the Personal Representative's failure to marshal assets during Year-2005, Plaintiffs' counsel chose to become involved.

102.    At first, Plaintiffs' counsel requested that the Personal Representative join forces with the beneficiaries to pursue Burriss for her thefts.

103.    Plaintiffs' counsel takes no pleasure in filing an action against a colleague.

104.    Instead of cooperating with the beneficiaries and their counsel, Defendant Parker chose to contest the invalidity of his settlement with Burriss and the Consent Order he subsequently sought judicially ratifying that settlement.

105.    Worse, during discovery after all depositions had taken place, Defendant Parker, by and through his defense counsel, offered to settle the matter but refused to provide a settlement dollar figure when requested by Plaintiffs.

106.    So began this long arduous and unnecessary journey of 10 years for the beneficiaries and 8 years for their counsel (running) of: 1) a successful litigation against

Defendant Parker leading to his removal for 5 breaches of his fiduciary duties; 2) an appeal, wherein, Defendant Parker failed in his pursuit of having some, if not all, of the 5 breaches of his fiduciary duties overturned, as well as an appellate opinion holding that the beneficiaries themselves, not only the successor personal representative (as was argued by Parker and his defense counsel at trial) may pursue recovery for diminution in value to the Estate by Defendant Parker; and 3) the current federal action seeking recovery from the Defendants to make the Estate and its rightful beneficiaries whole.

107.    Plaintiffs' counsel should be justly compensated by Defendant Parker himself as a monetary sanction for his compounded derelictions and misguided self-serving approach.

108.    Plaintiffs' counsel has incurred $65,000 in legal fees and costs to date that should not be borne by the impoverished beneficiaries Defendant Parker attempted to take advantage of, but by Defendant Parker himself for causing and prolonging this unnecessary chase.

### $10,600 Remaining in Estate Funds as of *circa* December 2009

109.    At the time that Brown assumed the successor Personal Representative position, the Estate Wachovia bank account had approximately $10,600.

110.    From *circa* December 2009 to date Brown has failed to provide Plaintiffs or their counsel with a single statutorily requisite periodic Accounting pursuant to D.C. Statute § 20-721.

111.    Brown must be held directly liable to Plaintiffs for these monies.

112.    Moreover, Brown failed to keep herself apprised of the status of Appellate proceedings directly touching on her fiduciary duties to the Estate.

113.    In an e-mail dated March 15, 2013, Brown informed Plaintiffs' counsel that she had thought that "the appeal had been dismissed" and requested a copy of the opinion.

114.    The Estate was closed by Brown on November 22, 2013 with no notice to Plaintiffs or their counsel, thus, Defendant Brown has foreclosed the opportunity for her or Plaintiffs to seek vacating the Consent Order fraudulently induced by Burriss to be awarded $62,009 for the decedent's custom Cadillac Deville and jewelry.

115.    Brown must be held directly liable to Plaintiffs for these monies as well, either through Brown's fiduciary bond and/or by her personally.

## COUNT I - BREACH OF FIDUCIARY DUTY
### [Removed Personal Representative Darryl S. Parker, Esq.]

116.    Plaintiffs reallege and repeat each and every allegation contained in paragraphs 1 113 and incorporates each as if fully set forth herein.

117.    Defendant Parker owed a fiduciary duty of care to the Estate of James Percy Jarvis.

118.    Defendant Parker owed a fiduciary duty of care to the Plaintiff Estate beneficiary interested persons.

119.    Defendant Parker breached his fiduciary duties, some of which have already been judicially determined.

120.    Defendant Parker actually and proximately caused monetary damage to Plaintiffs inheritance rights.

121.    Plaintiffs have suffered monetary damages as a result of Defendant Parker's acts and omissions.

122.    Defendant Parker must be held directly liable for monetary damages suffered by the interested person Plaintiff Estate beneficiaries.

## COUNT II - CIVIL CONVERSION
### [Removed Personal Representative Darryl S. Parker, Esq.]

123.    Plaintiffs reallege and repeat each and every allegation contained in paragraphs 1-113 and incorporates each as if fully set forth herein.

124.    Estate property belonging to the Plaintiffs through inheritance were being held and administered by Defendant Parker.

125.    Defendant Parker took possession of Plaintiffs' property permanently.

126.    Defendant Parker's conduct was unauthorized by Plaintiffs or a court of law at the time of his taking.

127.    Plaintiffs have suffered monetary damages as a result of Defendant Parker's possessory acts.

128.    Defendant Parker must be held directly liable for monetary damages suffered by the interested person Plaintiff Estate beneficiaries.

## COUNT III - BREACH OF FIDUCIARY DUTY
### [Successor Personal Representative C. Hope Brown, Esq.]

129.    Plaintiffs reallege and repeat each and every allegation contained in paragraphs 1-113 and incorporates each as if fully set forth herein.

130.    Defendant Brown owed a fiduciary duty of care to the Estate of James Percy Jarvis.

131.    Defendant Brown owed a fiduciary duty of care to the Plaintiff Estate beneficiary interested persons.

132.    Defendant Brown breached her fiduciary duties in failing to provide statutorily requisite accounts, failing to marshal known Estate assets and failing to keep herself apprised of Appellate proceedings related to the Estate.

133.    Defendant Brown proximately caused monetary damage to Plaintiffs inheritance rights.

134.    Plaintiffs have suffered monetary damages as a result of Defendant Brown's acts and omissions.

135.    Defendant Brown must be held directly liable for monetary damages suffered by the interested person Plaintiff Estate beneficiaries.

## Relief Sought

**WHEREFORE,** Plaintiffs respectfully request that this honorable Court enter an order awarding them:

(i)     $7,300.00 for the first adjudged fiduciary breach; the un-marshaled 1995 Cadillac El Dorado;

(ii)    $1,975.83 for the second adjudged fiduciary breach; the un-marshaled Charles Jarvis Estate inheritance and $291,667.00 for the un-marshaled lost inheritance of real estate from decedent's mother Rose Walker's Estate;

(iii)   $2,398.00 for the third adjudged fiduciary breach; the un-marshaled electronic post-death withdrawals from decedent's bank account;

(iv)    $10.00 for the fourth adjudged fiduciary breach; the bounced check fee related to the decedent's $618 stale payroll check imprudently deposited after its expiration into the decedent's bank account;

(v)     Approximately $5,000 for excessive bond premiums paid by the Estate due to the delay caused in the Removal Action, the Appeal and the instant Federal Action;

(vi)    $2,410 inappropriately paid to Greer M. Burriss' attorney Cheryl Chapman-Henderson during the settlement induced by fraud;

(vii)   $56,710.00 (less 9 months depreciation) for the un-marshaled then new custom 2003 Cadillac Deville traded by Burriss for a Cadillac Escalade

SUV;

(viii)  $5,299.00 for the un-marshaled jewelry stolen and pawned by Burriss;

(ix)  $38,705.87 return, restitution, refund, disgorgement of Defendant Parker's unauthorized cash withdrawals from the Estate bank account used to pay his defense counsel's legal fees and costs for the overwhelmingly failed defense argued in "bad faith" and without "just cause;"

(x)  $17,146.80 return, restitution, refund, disgorgement of Defendant Parker's legal fees for Estate administration due to his adjudged misadministration of the Estate, as well as for his defensive legal fees in his overwhelmingly failed defense argued in "bad faith" and without "just cause;"

(xi)  $65,000.00 Payment of Plaintiffs' counsel's fees and costs as monetary sanction in having to pursue removal of Defendant Parker at trial and briefing and arguing an appeal;

(xii)  $10,600 in Estate funds held in the Estate's Wachovia bank account as of *circa* December 2009;

(xiii)  9% interest per annum from the date of death, specifically June 3, 2003, for which Defendant Parker assumed responsibility through his fiduciary bond, until the date of judgment by this Court for (i) through (v) & (ix) and (x) above;

(xiv)  9% interest per annum from the date of payment of each bond premium incurred after 1 year of Defendant Parker's Estate administration, specifically June 11, 2005, until the date of judgment by this Court;

(xv)  9% interest per annum from the date Greer M. Burriss' counsel Cheryl Chapman-Henderson cashed the $2,410 check, specifically March 17, 2005, until the date of judgment by this Court;

(xvi)  9% interest per annum from the date of each withdrawal of cash to fund Defendant Parker's defense counsel for his failed defense to the date of judgment by this Court;

(xvii)  9% interest per annum from the date of withdrawal of cash to fund Parker's administration of the Estate and his failed defense to the date of

judgment by this Court;

(xviii)   Punitive Damages and/or monetary and/or non-monetary sanctions against Defendant Parker to be assessed by the court;

(xix)   Attorneys' fees and costs related to this action; and

(xx)   For such other and further relief as the Court deems just and equitable.

**THE PLAINTIFFS REQUEST A TRIAL BY JURY**

Dated: ~~March 10, 2013~~  *February 3rd, 2014*

Respectfully submitted,
ESTATE BENEFICIARIES
By their Attorney,

**Law Offices of James T. Zeas, Esq.**

/s/ Jaime T. Zeas

Jaime ("James") T. Zeas
DC Bar No. 491583
7608 Geranium Street
Bethesda, Maryland 20817
(815) 529-0098
j-zeas@nlaw.northwestern.edu