# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LASHAWN D. LEWIS, *et al.*,

           Plaintiffs,

           v.

DARRYL S. PARKER, *et al.*,

           Defendants.

Civil Action No. 14-163 (BAH)

Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

The instant suit is the latest iteration of a "long arduous and unnecessary journey of 10 years" of litigation over the estate of James Jarvis (the "James Jarvis Estate"), who died in 2003. Compl. ¶ 106, ECF No. 1; *see id.* ¶¶ 4–8, 15. The plaintiffs, who include LaCreasha Kennedy-Jarvis, the decedent's spouse, and Lashawn Lewis and Derek Jarvis, who are two out of at least four of the decedent's children, are dissatisfied with the administration of the James Jarvis Estate by the defendants, Daryl S. Parker and C. Hope Brown (collectively, the "defendants"), who served, successively, as the personal representatives of the estate. *See generally* Compl., ECF No 1.[1] The plaintiffs bring this action for breach of fiduciary duty against both defendants, *see* Compl. ¶¶ 116–22, 129–35, and for civil conversion against Defendant Parker, *see id.* ¶¶ 123–128.[2] Pending before the Court are three motions: Defendant Parker's Motion to Dismiss, Def.

---

[1] Each defendant is an attorney proceeding *pro se*. *See* Def. Parker Mot. Dismiss ("Def. Parker's Mot.") at 1, ECF No. 11; Def. Brown's Mot. Dismiss Alt. Mot. Summ. J. ("Def. Brown's Mot.") at 1, ECF No. 12.

[2] This Court has diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, since the plaintiffs are domiciled in Maryland, Defendants Parker and Brown are domiciled in the District of Columbia and "the District of Columbia or Virginia," respectively, and the amount of the alleged damages exceeds $75,000, since those damages allegedly include, *inter alia*, "$291,667.00 for the un-marshaled lost inheritance of real estate from decedent's mother Rose Walker's Estate," and $38,705.87 allegedly procured unlawfully in fees by Defendant Parker from the James Jarvis Estate. *See* Compl., ¶¶ 4–8, 10; *id.* at 21–22 ¶¶ (ii), (ix). Although, federal courts generally do not exercise subject matter jurisdiction over probate actions, the Supreme Court clarified that the so-called "probate exception" to federal diversity jurisdiction is "distinctly limited [in] scope," and only applies "when one court is

Parker's Mot. Dismiss ("Def. Parker Mot.") at 1, ECF No. 11; Defendant Brown's Motion to

Dismiss or, in the alternative, Motion for Summary Judgment, Def. Brown's Mot. Dismiss Alt.

Mot. Summ. J. ("Def. Brown Mot.") at 1, ECF No. 12; and the plaintiffs' Motion for Partial

Summary Judgment, ("Pls.' Mot."), ECF No. 16.[3]  For the reasons below, the defendants'

motions are granted.[4]

## I.    BACKGROUND

Both defendants assert that the plaintiffs' claims are barred on res judicata grounds

including claim and issue preclusion, *see* Def. Parker's Mot. ¶¶ 3–4; Def. Brown's Mot. at 1.

Thus, a review of the history of proceedings involving the James Jarvis Estate before the District

of Columbia Probate Court and Court of Appeals is necessary, before turning to the litigation in

this United States District Court.[5]

### A.    D.C. Probate Court Proceedings

Defendant Parker was appointed personal representative to the James Jarvis Estate in

2004, following the preclusion of one of Jarvis' daughters, Greer Burriss ("Burriss"), from

appointment as a Special Administrator.  *See* Compl. ¶¶ 18–22.  In his role as Personal

Representative, Defendant Parker secured a settlement, following court-ordered mediation, with

Burriss regarding "a 2003 Cadillac automobile allegedly titled in the name of the decedent."  *See*

---

exercising *in rem* jurisdiction over a *res*, [and] a second court will not assume *in rem* jurisdiction over the same *res*."
*Marshall v. Marshall*, 547 U.S. 293, 311 (2006).  As the Second Circuit noted in *Lefkowitz v. Bank of New York*,
528 F.3d 102, 108 (2d Cir. 2007), in the wake of *Marshall*, "[t]he probate exception can no longer be used to
dismiss 'widely recognized tort[s]' such as breach of fiduciary duty or fraudulent misrepresentation merely because
the issues intertwine with claims proceeding in state court."  Thus, the Court finds that it has jurisdiction over this
matter, despite the fact that the claims at issue are significantly intertwined with the underlying probate action.
[3] The plaintiffs incorrectly docketed their cross-motion for partial summary judgment, filing it solely as an
opposition to Defendant Parker's motion to dismiss.  *See* Pls.' Mot at 1.
[4] The plaintiffs have also moved, pursuant to Local Civil Rule 7(f), for a hearing on the pending motions, Pls.' Mot.
Hearing at 1, ECF No. 18, but this request is denied as unnecessary in light of the adequacy of the briefing and in the
interest of judicial economy.
[5] The Court has reviewed all of the voluminous submissions by the parties, but only provides specific citations to
those submissions relevant to the pending motions.  Consequently, the absence of a citation to a particular
submission by a party is not indicative of whether the Court reviewed the document.

Compl. Ex. L (District of Columbia Probate Court Consent Order, February 23, 2005, filed in *In re James P. Jarvis*, 2003 ADM 1036) (the "Consent Order")at 1, ECF No. 4-1. As part of the settlement, the James Jarvis Estate agreed to "forgo any further claims the Estate might raise against Greer M. Burriss," and Burriss "agree[d] to waive, relinquish and surrender her share as an heir in the net Estate of James P. Jarvis." *Id.*

Following entry of the Consent Order, the plaintiffs filed suit, on July 8, 2005, in District of Columbia Probate Court alleging that Defendant Parker "breached his fiduciary duty in administering the Estate." Compl. Ex. N (District of Columbia Probate Court Order, March 10, 2009, filed in *Jarvis v. Parker*, 2003 ADM 1036) (the "Removal Order")at 1, ECF No. 4-1. The majority of the breaches the plaintiffs accuse Defendant Parker of committing stem from the terms of the Consent Order, which the plaintiffs contend was improperly entered because "Burriss had undervalued the Estate and had stolen items from the decedent's abode shortly after his death." Compl. ¶¶ 19; *see id.* ¶ 27.

Before trial in Probate Court, the plaintiffs sought clarification of a ruling that limited the plaintiffs' possible relief to the removal of Defendant Parker as a personal representative. *See* Pls.' Opp'n Def. Brown's Mot. Dismiss Ex. A (District of Columbia Probate Court Order, July 25, 2007, filed in *In re Estate of James P. Jarvis*, 2003 ADM 1036) (the "Clarification Order")at 1, ECF No. 17-4.[6] Instead, the plaintiffs sought the ability to seek both "relief in equity and/or at law for damages owed the Jarvis Estate by Defendant Parker . . . ." *See id.* at 1. Prompted by the

---

[6] On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court generally may not review materials filed outside the pleadings. *See Kim v. United States*, 632 F.3d 713, 719–20 (D.C. Cir. 2011) (reversing and remanding district court's grant of motion to dismiss when court referred to materials outside the pleadings without converting motion to one for summary judgment). The parties have attached certain documents from the D.C. Probate Court to their legal memoranda, which are not attached to the Complaint. *See, e.g.*, Clarification Order. Since these records are public documents filed on a court docket, the Court may take judicial notice of such documents without converting the motion to one for summary judgment. *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005); *Slate v. Pub. Defender Serv. for the District of Columbia*, No. 13-798, 2014 WL 1315238, at *4 (D.D.C. Apr. 2, 2014) (collecting cases).

plaintiffs' request, the Probate Court issued the Clarification Order, which summarized the prior history, through 2007, of the probate litigation. *See generally id.*

Of particular relevance to the instant matter are two issues addressed in the Clarification Order. First, critically, the Probate Court rejected all of the plaintiffs' requests for damages based on certain purported assets not being included in the inventories and accountings of the James Jarvis Estate that Defendant Parker filed with the Probate Court. *See* Clarification Order at 6, 9–10. The court pointed out that the plaintiffs failed timely to object to Defendant Parker's inventories and accountings, thus waiving their right to later challenge the accuracy of those filings. *See id.* at 6. Consequently, the allegedly missing assets, for which the plaintiffs sought damages in their Complaint, were merely "assets that [the plaintiffs] believe the Estate *might have had*." *Id.* at 9 (emphasis in original). The court explained that the plaintiffs could not recover damages based on assets not listed on the inventories of the James Jarvis Estate to which the plaintiffs had ample opportunity, but declined or failed to challenge within the time provided for by the relevant statute. *See id.* Rather, the plaintiffs would only be able to secure damages, if at all, against Defendant Parker if they could prove that certain assets were lost from the James Jarvis Estate that were properly inventoried as part of the Estate and were no longer available due to Defendant Parker's alleged breaches of fiduciary duty. *See id.* at 9–10.

Second, the Probate Court rejected the plaintiffs' attack on the legitimacy of the Consent Order and their allegations that Defendant Parker breached his fiduciary duty by filing the Consent Order. *See id.* at 6–8. The court opined that "the Court, when deciding whether to grant the petition to settle, must have determined that the settlement was in the best interest of the estate." *See id.* at 6. Consequently, "Mr. Parker's decision to settle with Ms. Burriss would appear able to withstand Plaintiffs' challenge of any breach," especially considering that the

plaintiffs had the opportunity, pursuant to D.C. Code § 20-521, to seek an order restraining

Defendant Parker from joining the Consent Decree and the plaintiffs failed to do so. *See id.* at 7.

The court also considered, in the context of the Clarification Order, a motion filed by the

plaintiffs seeking to set aside the Consent Order, under D.C. Super. Ct. Civ. R. 60, based on

"newly discovered evidence." *Id.* at 8. The court denied this motion because the plaintiffs, as

non-parties to the Consent Order, had no standing to pursue such a motion and only the

successor personal representative, if Defendant Parker were removed, would be able to file such

a motion "if appropriate." *Id.*[7]

The Probate Court then held a trial on eight allegations, posited by the plaintiffs as

warranting Defendant Parker's removal as personal representative. The allegations were that

Defendant Parker: (1) failed "to marshal for the estate a 1995 Cadillac El Dorado that the

decedent owned when he died," Removal Order at 1; (2) failed "to seek to become Successor

Personal Representative of the estate of Charles Jarvis, James Jarvis' father, for which James

Jarvis had been Personal Representative before his death," *id.* at 2; (3) failed "to attempt to

recoup for the estate moneys debited from the decedent's bank account in the form of automatic

debits made after his death," *id.*; (4) failed "to attempt to secure funds from a stale payroll check

of the decedent," *id.*; (5) failed "to marshal estate real property in the states of New Jersey and

South Carolina owned by the decedent," *id.* at 1; (6) failed "to marshal for the estate certain

personal property that the decedent owned at the time of his death," *id.* at 1–2; (7) failed "to

communicate with the heirs about the administration of the estate," *id.* at 2; and (8) failed "to pay

creditors in a timely fashion," *id.*

---

[7] The Clarification Order also made clear that the plaintiffs were not entitled to a jury trial or punitive damages due to the equitable nature of the Probate Court proceedings. *See* Clarification Order at 10–11.

After hearing evidence at the trial, the Probate Court found that the plaintiffs had proven the first four allegations but not the last four, and removed Defendant Parker as Personal Representative. Removal Order at 24–25. Specifically, the Probate Court concluded that (1) Defendant Parker "mismanaged property, specifically the funds represented by [a] $618.00 [payroll] check made payable to James Jarvis by a District of Columbia Agency;" (2) that Defendant Parker "failed, without reasonable excuse, to fulfill the duties of his office" by (a) "failing to conduct the basic investigation/verification required to make informed decisions about" declining to marshal the 1995 Cadillac to the James Jarvis Estate, (b) foregoing "any claims by the James Jarvis [E]state to any funds from the Charles Jarvis estate," and (c) not seeking "the return from the bank or any other individual of moneys withdrawn from James Jarvis' bank account after his death." *Id.* The Probate Court concluded the plaintiffs failed to prove that Defendant Parker was derelict in his duty to marshal to the estate personal property owned by the decedent, real property allegedly owned by the decedent in New Jersey and South Carolina, *id.* at 17–18, or that Defendant Parker failed materially to communicate with the heirs or pay creditors in a timely fashion, *id.* at 12–13.[8]

Following the removal of Defendant Parker as the Estate's Personal Representative, he filed a "Petition for Award of Compensation for Personal Representative," which the Probate Court granted in part and denied in part. *See* Def. Brown's Mem. Supp. Def. Brown's Mot. ("Def. Brown's Mem.") Ex. 5 (District of Columbia Probate Court Order Granting Petition for Compensation, Dec. 7, 2009, filed in *Jarvis v. Parker*, 2003 ADM 1036) ("Def. Parker Fees

---

[8] The plaintiffs contend that the Probate Court adjudged Defendant Parker to have committed five fiduciary breaches, Compl. ¶ 55, including Defendant Parker's alleged failure to marshal property owned by the decedent's mother's estate in South Carolina, *see id.* ¶ 55(iii). The plaintiffs are incorrect. The Removal Order makes clear that the "[p]laintiffs have failed to prove that Parker had information that he could use to identify the property James Jarvis allegedly inherited from his (James Jarvis') mother." Removal Order at 18.

Order") at 1, ECF No. 12-5.[9]  The Court granted compensation to Defendant Parker in the

amount of $10,762.50 for approximately seventy hours of service in the case but denied his

request for an unspecified additional amount in compensation.  *Id.* at 2.  By contrast, the Probate

Court denied entirely the plaintiffs' "Petition for Award of Attorney's Fees, Investigatory Fees,

and Administrative Costs by Counsel for Plaintiffs, Heirs, and Beneficiaries," noting that "the

litigation tactics in which this counsel engaged throughout his involvement in this litigation

actually harmed the estate financially, costing it far more harm [than] by any inaction by the

Removed Personal Representative."  Def. Brown's Mem. Ex. 6 (District of Columbia Probate

Court Order Denying Petition for Compensation, Dec. 7, 2009, filed in *Jarvis v. Parker*, 2003

ADM 1036) ("Pls.' Counsel Fees Order") at 1, ECF No. 12-6.[10]  The Probate Court further

described plaintiffs' counsel's actions as "border[ing] on abuse of the litigation process, which

cannot be rewarded," and opined that the plaintiffs' counsel's "lack of familiarity with the law

and lack of litigation experience and skills contributed to much delay at the hearings and trial in

this matter."  *Id.*[11]

Defendant Brown was appointed in 2009 as successor Personal Representative following

the removal of Defendant Parker.  *See* Compl. ¶ 73.  She notified the plaintiffs that she did "not

plan to file" a Rule 60(b) motion seeking to vacate the Consent Order approved by the Probate

Court in 2005 and that, in her view, the plaintiffs' appeal of portions of the Probate Court's

Clarification Order and Removal Order were "not meritorious."  Compl. Ex. R (Email

Correspondence from Defendant Brown to Plaintiffs' Counsel, December 8–12, 2011) at 1, ECF

No. 5-1.

---

[9] See *supra* note 6.

[10] See *supra* note 6.

[11] The plaintiffs seek $65,000 in attorneys' fees and costs in the instant matter "as monetary sanction [sic] in having to pursue removal of Defendant Parker at trial and briefing and arguing an appeal," a request that has apparently already been denied by the D.C. Probate Court.  *See* Compl. at 22 ¶ (xi).

## B.    District of Columbia Court of Appeals Ruling

Defendant Parker appealed the Removal Order and the plaintiffs appealed portions of the Probate Court's Clarification Order and Removal Order. *See* Compl. Ex. M (Mem. Op. and J., Nos. 09-PR-1131 and 10-PR-0248, *In re Estate of James P. Jarvis* (D.C. Apr. 30, 2012) (the "2012 Appeal")) at 1, ECF No. 4-1. The District of Columbia Court of Appeals affirmed the Clarification Order and the Removal Order "in all respects." *See id.* The appellate court considered explicitly the plaintiffs' "claim [that] the trial court erred in denying their motion to vacate a consent order secured by Mr. Parker as personal representative, and that the trial court improperly deprived appellants of their right to seek damages against Mr. Parker."[12] *Id.* The D.C. Court of Appeals upheld the trial court's finding that the plaintiffs "lack standing to challenge the [Consent] [O]rder" because "[i]f, as appellants allege, the 2005 Consent Order was procured by fraud, the remedy is to have the personal representative removed in favor of a successor personal representative who has the authority to seek relief from that order of the trial court." *Id.* at 2. The D.C. Court of Appeals also held that the trial court was correct "in not awarding damages against Mr. Parker for breach of his fiduciary duties," since it "reserved the right to consider the issue of damages upon the removal of Mr. Parker as personal representative and the appointment of a successor personal representative." *Id.* The court stated that it was not "constru[ing] the trial court's order as foreclosing appellants' opportunity to obtain damages from Mr. Parker if the successor personal representative elects not to pursue damages." *Id.* (citing *In re Estate of Bernstein*, 3 A.3d 337, 342 n.6 (D.C. 2010)). Finally, the Court of Appeals denied Defendant Parker's cross-appeal and upheld the trial court's removal of him from his former position as the James Jarvis Estate's personal representative. *Id.* at 2–3.

---

[12] The plaintiffs raised other disputes with the Probate Court's orders, including the Clarification Order and Removal Order, but the D.C. Court of Appeals held that "those claims do not merit any discussion given our disposition of the claims." 2012 Appeal at 1 n.1.

## C.      Federal Court Proceedings

In March, 2013, the plaintiffs filed a complaint in this Court that is virtually identical to the instant Complaint, but failed timely to respond to the defendants' motions to dismiss that case, leading to the dismissal without prejudice of the suit.  *See Jarvis v. Parker*, No. 13-350, 2013 WL 2406293, at *1–2 (D.D.C. June 3, 2013).  The plaintiffs' subsequent motion for relief from the judgment of dismissal pursuant to Federal Rules of Civil Procedure 60(b)(1) and (b)(6) was denied because the plaintiffs' failure to respond to the defendants' motions to dismiss was the result of the plaintiffs' counsel "mistake or ignorance of the rules of this Court," which did not constitute "'excusable neglect'" under Rule 60(b)(1), *Jarvis v. Parker*, No. 13-350, 2013 WL 346077, at *4 (D.D.C. Jan. 31, 2014), and did not otherwise show the requisite "extraordinary circumstances" to warrant relief under Rule 60(b)(6), *id.* at *5.[13]

Within four days of the dismissal of the initial federal complaint, the plaintiffs re-filed their claims in the instant Complaint.  *See generally* Compl.  With regard to Defendant Parker, the plaintiffs allege that he breached his "fiduciary duty of care" to the James Jarvis Estate and the plaintiffs as estate beneficiaries, Compl. ¶¶ 117–18, some of which breaches have "already been judicially determined," *id.* ¶ 119, and thereby "actually and proximately caused monetary damage to the Plaintiffs [sic] inheritance rights," *id.* ¶ 120.  The actions allegedly constituting breaches of fiduciary duty are the same actions that were considered by the Probate Court, including (1) entry of the Consent Order with Burriss, *id.* ¶¶ 27–37; (2) failing to obtain from Burriss "valuable personal property," *id.* ¶ 38, amounting to "$5,299.00 in jewelry purchased by the decedent just months prior to his death," *id.* ¶ 43; (3) failing to secure "the decedent's second older 1995 Cadillac El Dorado," which was "held by a mechanic" and valued at "$7,300.00," *id.*

---

[13] Since the District Court dismissed the prior suit without prejudice, *see Jarvis*, 2013 WL 2406293, at *1, the dismissal of that suit is not a "decision on the merits" and therefore has no res judicata effect, *see Havens v. Mabus*, No. 12-5339, 2014 WL 3674599, at *5 (D.C. Cir. July 25, 2014).

¶ 55(i); (4) failing to investigate the decedent's inheritance from the estate of the decedent's father, in the amount of "$1,975.83," and the decedent's mother, which estates allegedly included real property in New Jersey and South Carolina and amounted to a total of "$291,667.00," *id.* ¶ 55(ii–iii); (5) failing to investigate post-death withdrawals of "$2,398," *id.* ¶ 55(iv); and (6) failing to ensure a stale payroll check of the decedent did not bounce, resulting in "a $10.00 bounced check fee," *id.* ¶55(v).  The plaintiffs also allege that Defendant Parker committed civil conversion of some of the James Jarvis Estate's assets by petitioning for and being awarded administration and attorneys' fees for his work.  *See id.* ¶¶ 83–87, 124–128.

With regard to Defendant Brown, the plaintiffs allege that she breached her "fiduciary duty of care" to the James Jarvis Estate and the plaintiffs, by failing (1) "to provide statutorily requisite accounts," Compl. ¶ 132; (2) "to marshal known Estate assets," *id.*; and (3) "to keep herself apprised of Appellate proceedings related to the Estate," *id.*  According to the plaintiffs, these breaches "proximately caused monetary damages to Plaintiffs [sic] inheritance rights" causing the plaintiffs to suffer "monetary damages" for which Defendant Brown "must be held directly liable" to the plaintiffs, *id.* ¶¶ 133–35.

## II.    LEGAL STANDARD

### A.    Motion To Dismiss For Failure To State A Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also* FED. R. CIV. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 557).  Instead, the complaint must plead facts that are more than "'merely consistent with' a defendant's liability" but provide

sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly,* 550 U.S. at 556); *accord Rudder v. Williams,* 666 F.3d 790, 794 (D.C. Cir. 2012). The Court "must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 17 (D.C. Cir. 2008) (citations and internal quotation marks omitted).

### B. Res Judicata (Claim Preclusion and Issue Preclusion)

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). In contrast, issue preclusion, which was "once known as 'collateral estoppel' and 'direct estoppel,'" bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id*. at 892 and n.5 (internal quotations and citations omitted); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980) (under "res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action" and collateral estoppel "preclude[s] relitigation of the issue in a suit on a different cause of action"); *U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 696 (D.C. Cir. 2009) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.") (internal quotation marks and citation omitted). The Supreme Court has explained that these

preclusion doctrines serve important functions to "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor*, 553 U.S. at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153-154 (1979)) (alteration in original); *see also Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) ("The objective of the doctrine of issue preclusion . . . is judicial finality; it fulfills 'the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction.'") (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982)); *Washington Water Power Co. v. FERC*, 775 F.2d 305, 341 (D.C. Cir. 1985) (the purpose of res judicata is "to prevent relitigation of issues that were, or should have been, previously tried").

In applying issue preclusion, three elements must be satisfied for a final judgment to preclude litigation of an issue in a subsequent case: "[1], the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case[; 2], the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case[; and] [3] preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha*, 961 F.2d at 254 (D.C. Cir. 1992)) (alterations in original). "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

The overriding goal of the issue preclusion doctrine is to "avert needless relitigation and disturbance of repose, without inadvertently inducing extra litigation or unfairly sacrificing a

person's day in court." *Otherson v. U.S. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983).

When the first two prerequisites for application of the issue preclusion doctrine are met, the

plaintiff "must be permitted to demonstrate, if he can, that he did not have a fair opportunity

procedurally, substantively, and evidentially to pursue his claim the first time." *Blonder-Tongue*

*Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971) (internal quotation marks omitted).

As the Supreme Court explained, "a party who has had one fair and full opportunity to prove a

claim and has failed in that effort, should not be permitted to go to trial on the merits of that

claim a second time. Both orderliness and reasonable time saving in judicial administration

require that this be so unless some overriding consideration of fairness to a litigant dictates a

different result in the circumstances of a particular case." *Id.* at 324–25.

Notably, "[a] court conducting an issue preclusion analysis does not review the merits of

the determinations in the earlier litigation." *Consol. Edison Co. of N.Y. v. Bodman*, 449 F.3d

1254, 1257 (D.C. Cir. 2006); *see also Nat'l Post Office Mail Handlers, Watchmen, Messengers,*

*and Grp. Leaders Div. of Laborers' Int'l Union of N. Am. v. Am. Postal Workers Union*, 907

F.2d 190, 194 (D.C. Cir. 1990) ("The doctrine of issue preclusion counsels us against reaching

the merits in this case, however, regardless of whether we would reject or accept our sister

circuit's position."); *Yamaha Corp. of Am. v. United States*, 745 F. Supp. 734, 738 (D.D.C. 1990)

(noting the D.C. Circuit's instruction "that collateral estoppel prevents a court from ever

reaching the merits").

For claim preclusion, "a subsequent lawsuit will be barred if there has been prior

litigation: (1) involving the same claims or cause of action, (2) between the same parties or their

privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent

jurisdiction." *Havens v. Mabus*, No. 12-5339, 2014 WL 3674599, at *4 (D.C. Cir. July 25, 2014)

(quoting *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009)).  Under the doctrine of claim preclusion, a final judgment on the merits in a prior suit involving the same parties bars subsequent suits based on the same cause of action, since a plaintiff is expected to "present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence."  *U.S. Indus., Inc. v. Blake Constr. Co., Inc.,* 765 F.2d 195, 205 (D.C. Cir. 1985) (quoting 1B J. Moore, *Moore's Federal Practice,* ¶ 0.410[1] (1983));  *see Montana,* 440 U.S. at 153; *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.5 (1979).  "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'"  *Apotex, Inc. v. FDA,* 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting *Drake v. FAA,* 291 F.3d 59, 66 (D.C. Cir. 2002)).  Parties are thus prevented from relitigating in a separate proceeding "any ground for relief which they already have had an opportunity to litigate[,] even if they chose not to exploit that opportunity," and regardless of the soundness of the earlier judgment.  *Hardison v. Alexander,* 655 F.2d 1281, 1288 (D.C. Cir. 1981); *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.,* 723 F.2d 944, 949 (D.C. Cir. 1983) (noting that claim preclusion "forecloses all that which might have been litigated previously" (citation omitted)).

## III.  DISCUSSION

The plaintiffs, dissatisfied with the clear and unambiguous rulings provided by the District of Columbia's Probate Court and Court of Appeals, have now filed suit twice in this Court, attempting to recover damages allegedly due the James Jarvis Estate as a result of Defendant Parker's alleged fiduciary breaches.  *See* Pls.' Opp'n Def. Brown's Mot. ("Pls.' Brown Opp'n") at 7–8, ECF No. 17-1.[14]  As discussed below, the two claims against Defendant

---

[14] Although the plaintiffs claim they are seeking "exorbitant damages in the amount of $504,222.50" against Defendant Parker, Compl. ¶ 1, a close reading of the Complaint reveals that the most of the claimed damages are based on the value of property the Probate Court has already determined was not part of the Estate and reflected no breach of fiduciary duty by the Estate's Personal Representative.  Specifically, the plaintiffs include in their

14

Parker are barred by res judicata, since these claims and issues have been litigated already in the local courts of the District of Columbia. The claim against Defendant Brown is barred by the applicable statute of repose and the factual allegations made in the plaintiffs' own filings. The claims against each defendant are examined in turn.[15]

## A.    The Claims Against Defendant Parker

The plaintiffs assert two claims against Defendant Parker: breach of fiduciary duty stemming from his actions as Personal Representative of the James Jarvis Estate, Compl. ¶¶ 116–22, and civil conversion of the payments made to him for administering the James Jarvis Estate and the attorneys' fees awarded him following the Removal Order, *id.* ¶¶ 83–87, 123–28.[16] The elements of each claim and whether those claims are precluded on res judicata grounds are examined individually.

---

"exorbitant" damage claim property covered by the court-approved settlement decree, *id.* at 21–22 ¶¶ (vii–viii); court-awarded attorneys' and estate administration fees, *id.* at 22 ¶¶ (ix–x); and attorneys' fees for the plaintiffs' counsel previously rejected by the D.C. Probate Court, *id.* ¶ (xi). The value of the property at issue in the breaches of fiduciary duty found by the Probate Court and that arguably could have been part of the Estate, absent such breaches, would amount to approximately $11,000, the damages amount that plaintiffs claim they are entitled to in their partial motion for summary judgment. Pls.' Corr. Am. Opp'n Def. Parker's Mot. ("Pls.' Parker Opp'n") at 7, ECF No. 21. As explained *infra*, the plaintiffs are not entitled to any relief from this Court, monetary or otherwise.

[15] The parties do not address the choice of law that applies in this diversity action, but predicate their arguments on District of Columbia law. *See* Def. Parker's Mem. Supp. Def. Parker's Mot. Dismiss ("Def. Parker's Mem.") at 8, ECF No. 11 (arguing District of Columbia res judicata principles apply to the plaintiffs' claims); Def. Brown's Mem. at 8 (arguing application of District of Columbia statute of repose bars plaintiffs' claims); Pls.' Parker Opp'n at 3 (arguing District of Columbia Court of Appeals judgment controls liability in this matter). Indeed, when exercising diversity jurisdiction, state law provides the applicable substantive rules of law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). Therefore, the Court will apply District of Columbia law to this case. *Burke v. Air Serv. Int'l, Inc.,* 685 F.3d 1102, 1107 (D.C. Cir. 2012) ("The 'broad command of Erie,' of course, is that 'federal courts are to apply state substantive law and federal procedural law' when sitting pursuant to their diversity jurisdiction.") (quoting *Hanna v. Plumer,* 380 U.S. 460, 465 (1965)); *see also Arias v. DynCorp,* 752 F.3d 1011, 1013 (D.C. Cir. 2014); *Cordoba Initiative Corp. v. Deak,* 900 F. Supp. 2d 42, 46 n.2 (D.D.C. 2012) (applying District of Columbia law in diversity suit where "[b]oth parties applied District of Columbia law in their motion papers without engaging in any choice of law analysis"); *Piedmont Resolution, L.L.C. v. Johnston, Rivlin & Foley,* 999 F. Supp. 34, 39 (D.D.C. 1998) (same).

[16] The grounds for the civil conversion claim are vague, at best, as set out in the Complaint. Nevertheless, the plaintiffs have provided enough information about the legal theory upon which they base their civil conversion claim for the Court to resolve the instant motion. *See* Part III.A.2. *infra.*

### 1.    *Breach of Fiduciary Duty*

The seven allegations raised against Defendant Parker in this action are properly precluded.  The elements and application of claim preclusion are addressed first before turning to issue preclusion.

### a)    *Claim Preclusion*

The first element in the application of the claim preclusion bar is whether the same claim or cause of action is being raised as one raised in a previous suit.  *See Havens*, 2014 WL 3674599, at *4.  In their Complaint before the District of Columbia Probate Court, the plaintiffs alleged that "Mr. Parker has breached his fiduciary duty to the Jarvis estate."  Def. Parker's Mot. Ex. 1 (Complaint [for] Removal of Personal Representative, Appointment of Successor Representative, Demand for Completion of Accounting and Damages, July 7, 2005, filed in *In re Estate of James P. Jarvis*, 2003 ADM 1036) (the "Probate Complaint") ¶ 38, ECF No. 11.[17]  As support for this assertion before the D.C. Probate Court, the plaintiffs alleged, *inter alia*, that Defendant Parker (1) improperly "engaged in a mediation proceeding" with Burriss regarding the decedent's 2003 Cadillac, *id.* ¶ 22; (2) failed to obtain property allegedly stolen by Burriss from the decedent's apartment, *id.* ¶ 15; (3) failed to follow-up on a $618.00 payroll check to the decedent, *id.* ¶6(h); (4) failed to include real property from the decedents' mother's and father's estates in the James Jarvis Estate inventory, *id.* ¶ 13(c); (5) failed to marshal a 1995 Cadillac for the estate, *id.* ¶ 24; and (6) failed to investigate certain automatic debits to the decedent's bank accounts that occurred after his death, *id.* ¶ 6(g).  These are the same allegations underlying the plaintiffs' breach of fiduciary duty claim against Defendant Parker in the instant matter.  *See* Compl. ¶¶ 44–46 (alleging Defendant Parker improperly entered into settlement after mediation regarding decedent's 2003 Cadillac); *id.* ¶¶ 25, 38–43 (alleging failure to obtain property

---

[17] *See supra* note 6.

allegedly stolen by Burriss from decedent's apartment); *id.* ¶ 55(v) (alleging failure to follow-up on $618.00 payroll check); *id.* ¶ 55(ii) (alleging failure to include property from decedent's mother's and father's estates in James Jarvis Estate inventory); *id.* ¶ 55(i) (alleging failure to secure 1995 Cadillac for decedent's estate); *id.* ¶ 55(iv) (alleging failure to investigate "post-death electronic withdrawals from the decedent's bank account . . . [totaling] $2,398.00").  Thus, the first element for application of the claim preclusion bar is met as to the breach of fiduciary duty claim.

The second element for the claim preclusion bar is whether the same parties or their privies were involved in the prior suit and the instant suit.  *See Havens*, 2014 WL 3674599, at *4. In the instant matter, all of the plaintiffs and Defendant Parker were parties to the Probate Court and D.C. Court of Appeals proceedings.  *See* Probate Compl. at 1; 2012 Appeal at 1.  Thus, the second element is met.

The third element for the claim preclusion bar is whether there has been a final, valid judgment on the merits.  *See Havens*, 2014 WL 3674599, at *4.  As previously noted, the District of Columbia courts have issued final judgments on the merits as to each of the plaintiffs' allegations in this matter.  Specifically, in the Clarification Order the Probate Court held that entry into the Consent Order with Burriss and failure to secure real property for the James Jarvis Estate in South Carolina in which the decedent allegedly held an interest were not breaches of Defendant Parker's fiduciary duty, *see* Clarification Order at 7; Removal Order at 18.  The plaintiffs' five remaining allegations in the instant case, i.e., the failure to (1) obtain property from the estate allegedly stolen from the decedent's apartment; (2) follow-up on the stale payroll check; (3) pursue property from the decedent's father's estate; (4) secure the 1995 Cadillac for the decedent's estate; and (5) pursue the return of automatic post-death debits to the decedent's

bank account, were rejected by the Probate Court as untimely and, therefore, waived. *See* Clarification Order at 9–10. This prior, final judicial ruling is fatal to the plaintiffs' damages claim here against Defendant Parker for breach of fiduciary duty since none of the purported assets subject to a breach were included in the inventory of Estate assets. *See id.*

While Defendant Parker's actions in failing to marshal certain assets to the Estate amounted to a breach of fiduciary duty warranting his removal as personal representative, the fact that the plaintiffs failed to object to his accountings and inventories as insufficient or improper precluded any award of damages based on those un-marshaled assets. *See* Clarification Order at 6, 9–10. Instead, the only damages for which Defendant Parker might be personally liable, and to which the D.C. Court of Appeals expressly referred in the 2012 Appeal, *see* 2012 Appeal at 2, are for any assets of the James Jarvis Estate that *were* included on the unchallenged inventories and accountings but were subsequently lost due to Defendant Parker's wrongful action or inaction. *See* Clarification Order at 9. None of the items alleged in the instant matter were included in the inventories and accountings and were instead, as the Probate Court held, assets that the "plaintiffs believe the Estate *might have had.*" *Id.* (emphasis in original). Thus, contrary to the plaintiffs' contention, the actions for which the plaintiffs are seeking damages in this Court were actually and necessarily determined to have been waived by the D.C. Probate Court, a ruling affirmed by the D.C. Court of Appeals.[18] Thus, all of the plaintiffs' allegations in

_____

[18] Defendant Brown argues that the D.C. Probate Court "reserved the right to consider the issue of damages upon the removal of Mr. Parker as personal representative," 2012 Appeal at 2, and, consequently, this Court is precluded from opining on such damages under the *Rooker-Feldman* doctrine. Def. Brown's Mem. at 7 (stating the "plaintiffs' new federal district court litigation invites this court's review and rejection of the judgments of the Superior Court of the District of Columbia and the District of Columbia Court of Appeals" and asserting that the *Rooker-Feldman* doctrine mandates dismissal of the action); *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (declaring review of "unfavorable state-court judgments . . . . out of bounds, *i.e.*, properly dismissed for want of subject-matter jurisdiction."). In essence, this defendant asserts that the plaintiffs are properly considered "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced" and are "inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. If the *Rooker-Feldman* doctrine applied here, this Court would lack subject matter jurisdiction over the

this matter are the subject of a final, valid judgment on the merits through either the Clarification Order or the Removal Order.

The final element for the application of the claim preclusion bar is whether the final judgments were rendered by a Court of competent jurisdiction. *See Havens*, 2014 WL 3674599, at *4. The parties do not dispute this element, and the 2012 Appeal approved all of the Probate Court's Orders in all respects, indicating that the Probate Court was a court of competent jurisdiction to issue its rulings. *See* 2012 Appeal at 1. Thus, this fourth element for the application of claim preclusion is met.

Consequently, all of the plaintiffs' allegations in the instant suit are barred by claim preclusion and, on this ground alone, the plaintiffs' complaint must be dismissed.

b)      *Issue Preclusion*

Even if the plaintiffs' allegations were not barred by claim preclusion, many of the allegations, if not all, would be barred by issue preclusion as well. The first element of issue preclusion, whether the same issue raised in the instant suit was raised in the prior suit, is substantively similar to the first element of claim preclusion and, as such, the Court need not repeat its analysis of this element here to determine that the first element of the issue preclusion bar is met. *See supra* Part III.A.1.a.

The second element for issue preclusion to apply is whether a court of competent jurisdiction actually and necessarily determined the issue previously. *See Martin*, 488 F.3d at 454. As previously noted and, indeed, as pleaded in the Complaint, the Probate Court and the D.C. Court of Appeals addressed the plaintiffs' instant claims and allegations in their previous

---

plaintiffs' breach of fiduciary duty claims. *Id.* Since the claims against both defendants are resolved on other grounds, the Court need not address this argument, which would, in any event, lead to the same result: dismissal of the plaintiffs' claims without reaching the merits of those claims.

rulings. *See supra* Part III.A.1.a; *see also* 2012 Appeal at 1; Clarification Order at 8–10. The second element for application of the issue preclusion bar is met.[19]

The final element of issue preclusion is whether its application would result in unfairness to the party against whom this doctrine is to be applied. *See Martin*, 488 F.3d at 454. In examining "unfairness" for the purposes of issue preclusion, the D.C. Circuit has been primarily concerned with whether "the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude." *Yamaha*, 961 F.2d at 254. In other words, where the court "can discern no difference between the incentives the [plaintiffs] may have had in" their earlier case and the instant matter, the application of issue preclusion does not result in the compelling showing of unfairness that would render the issue preclusion bar inapplicable. *See Venetian Casino Resort, LLC v. NLRB*, 484 F.3d 601, 610 (D.C. Cir. 2007). The plaintiffs offer no argument, nor can the Court discern one, as to why the incentive to litigate Defendant Parker's alleged breaches of fiduciary duty in the Probate Court were any different from their incentives here.[20] Considering that the facts underpinning the plaintiffs' Complaint in the instant matter are identical to those raised in the probate proceedings, and the plaintiffs zealously litigated and appealed those issues in the local courts, there is no "vastly greater incentive" in this action that would negate the application of the issue preclusion bar.

---

[19] Indeed, the plaintiffs assert in their motion for partial summary judgment that Defendant Parker's alleged breaches of fiduciary duty pertaining to failure to marshal the 1995 Cadillac, money owed the decedent by his father's estate, a stale payroll check, and certain automatic debits from the decedent's bank account after his death, have been previously considered and necessarily determined by a court of competent jurisdiction, the D.C. Probate Court and Court of Appeals. *See* Pls.' Mot. at 1 (noting certain breaches had been previously adjudged); 2012 Appeal at 2–3 (affirming removal of Defendant Parker as personal representative); Removal Order at 24–25 (listing breaches of fiduciary duty warranting removal by Defendant Parker).

[20] The plaintiffs appear to argue that they cannot obtain a fair trial in the Probate Court because "Defendant Parker is well-known, is a member of various committees and has been practicing for over thirty (30) years." Compl. ¶ 63; *see also id.* ¶ 64 (noting "[a]n example of likely favoritism and bias toward Defendant Parker by the local Probate Court . . ."). The plaintiffs offer no case law to support their assertion and, indeed, it is difficult to reconcile their contention with the Probate Court's removal of Defendant Parker as the James Jarvis Estate's Personal Representative and the Court of Appeals' subsequent affirmation of that ruling.

Consequently, the Court finds that the plaintiffs' claim for breach of fiduciary duty against Defendant Parker is also barred by issue preclusion.[21]

## 2. *Civil Conversion*

The plaintiffs' second claim against Defendant Parker is for civil conversion. "The essence of a conversion is a wrongful taking or a wrongful retention of property after a rightful possession." *Shehyn v. District of Columbia*, 392 A.2d 1008, 1012 (D.C. 1978). Central to a conversion claim is the "dispossession of property rights," since absent such dispossession "there can be no action for conversion." *Kaempe v. Myers*, 367 F.3d 958, 964 (D.C. Cir. 2004).

The Complaint alleges that Defendant Parker converted "$38,705.87 of Estate cash in its bank account to fund his failed defense" to the plaintiffs' prior action to remove him as Personal Representative. Compl. ¶ 83. The gravamen of the plaintiffs' Complaint is that Defendant Parker required "a court order *prior* to taking any funds from the Estate bank account in defending a removal action." *Id.* ¶ 87 (emphasis in the original). Similarly to the claim against Defendant Parker for breach of fiduciary duty, however, the plaintiffs' Complaint reveals that this issue, too, has been previously decided by the District of Columbia Probate Court.

The plaintiffs state in their Complaint that "[t]he fact that a Judge *subsequently* attempted to right Parker's wrong by ordering that the already removed funds was proper after-the-fact does not comply [with] D.C. Statutes §§ 20-526 & 20-533 or excuse Defendant Parker's breach thereof." Compl. ¶ 89 (emphasis in the original). This statement makes clear that (1) the issue was brought before a court of competent jurisdiction and (2) that the court necessarily decided the issue, since the Court entered an Order stating the removal of funds "was proper after-the-

---

[21] Since res judicata bars the claim in its entirety from being heard in this Court, it is unnecessary to reach Defendant Parker's alternative grounds for dismissal.

fact." *See id.*; *see also Martin*, 488 F.3d at 544.[22]  Whether the court's decision is correct as a matter of law is immaterial to whether the issue preclusion bar applies to this action.  *See City of Arlington v. FCC*, 133 S. Ct. 1863, 1869 (2013).[23]

The plaintiffs offer no argument as to why it would be unfair to apply issue preclusion to this claim, nor can the Court discern any reason why the incentives for seeking funds allegedly improperly retained by Defendant Parker are any greater than the incentives the plaintiffs had in seeking to prevent the disbursement of those funds to Defendant Parker in the first instance.  Thus, issue preclusion applies to this civil conversion claim and it must be dismissed.

*     *     *

To sum up, the two claims raised by the plaintiffs in the instant complaint against Defendant Parker, and the factual bases for those claims, were raised, addressed, and necessarily decided by courts of competent jurisdiction, and the application of claim and issue preclusion to these claims does not work an unfairness on the plaintiffs.  The plaintiffs had their day in court and this Court need not provide the proverbial "second bite at the apple."[24]  Defendant Parker's motion to dismiss on the grounds of res judicata is granted as to all claims against him.

### B.     The Claim Against Defendant Brown

The plaintiffs assert a single claim against Defendant Brown: breach of fiduciary duty to the James Jarvis Estate.  *See* Compl. ¶¶ 129–35.  The basis for the claim against Defendant

---

[22] The plaintiffs have not submitted the decision approving these expenditures, but the Court must accept factual allegations as true for the purposes of a motion to dismiss.

[23] While unclear from the vagueness of the plaintiffs' civil conversion claim, assuming, *arguendo*, that the plaintiffs intended this claim to cover the award of $17,146.80 to Defendant Parker for his Estate administration and attorneys' fees, the same issue preclusion principles bar consideration of the claim.  The Probate Court specifically addressed fees paid to Defendant Parker for estate administration, *see* Clarification Order at 4 (holding claims for attorneys' fees prior to Defendant Parker's removal untimely), and after the proceedings, *see* Def. Parker's Fees Order at 1 (noting the court consider "the opposition" to Defendant Parker's fees petition).  Thus, these claims have been brought before, and necessarily ruled upon by, a court of competent jurisdiction and the plaintiffs have offered no reason why application of issue preclusion would be fundamentally unfair.

[24] As previously noted, since this is the plaintiffs' second identical suit in this District, it would more properly be considered the plaintiffs' "third bite at the apple."

Brown is difficult to disentangle from the plaintiffs' claims against Defendant Parker, and the parties' briefing does little to alleviate this opaqueness. Nevertheless, the allegations that appear to underlie the claim fail to state a claim upon which relief can be granted.

The factual allegations relating exclusively to Defendant Brown are contained in paragraphs 73 through 82 and paragraphs 109 through 115 of the Complaint. In sum, the plaintiffs allege that Defendant Brown (1) did not provide the plaintiffs with the "requisite periodic Accounting" owed to them "pursuant to D.C. [Code] § 20-721," Compl. ¶ 110; "failed to keep herself apprised of the status of Appellate proceedings directly touching on her fiduciary duties to the Estate," *id.* ¶ 112; and (3) closed the estate "with no notice to Plaintiffs or their counsel" which "foreclosed the opportunity for her or Plaintiffs to seek vacating the Consent Order," *id.* ¶ 114; *see also id.* ¶ 76 (noting Defendant Brown was opposed to moving to vacate the Consent Order); *id.* ¶ 80 (alleging Defendant Brown failed to provide accountings to beneficiaries). The Complaint alleges that as a result of these perceived failures, "Defendant Brown must be held 'directly liable' to Plaintiffs for approximately $11,000 remaining in the Estate Wachovia bank account as of *circa* December 2009 when Defendant Brown assumed office." *Id.* ¶ 82 (errors in original).

As to the first allegation, that Defendant Brown failed to notify the plaintiffs of her accountings, the plaintiffs' own opposition references the Probate Court docket in this matter and the attached exhibit includes excerpts from that docket. *See generally* Pls.' Opp'n Def. Brown's Mot. Dismiss Ex. F (Probate Court Docket for *In re Estate of James P. Jarvis* ("Probate Docket")), ECF No. 17-9.[25] This exhibit shows that Defendant Brown's accountings were mailed to the parties on August 19, 2010, May 24, 2011, December 30, 2011, and November 2, 2012. *See id.* at 3–5. Thus, contrary to the plaintiffs' allegation that from "*circa* December 2009

_____

[25] *See supra* note 6.

to date Brown has failed to provide Plaintiffs or their counsel with a single statutorily requisite periodic Accounting," Compl. ¶ 110, the plaintiffs' own exhibit reveals that at least four such accountings were mailed to them, *see* Probate Docket at 3–5.

The second allegation, that Defendant Brown failed to keep herself apprised of the appellate proceedings in this matter, appears to be based on the plaintiffs' assertion that Defendant Brown sent an email to the plaintiffs' counsel on March 15, 2013 stating that "she had thought that 'the appeal had been dismissed' and requested a copy of the opinion." Compl. ¶ 113; *see id.* ¶¶ 76–77 (noting Defendant Brown declined to join in the D.C. Court of Appeals proceeding). Defendant Brown's evaluation of the merits of the plaintiffs' appeal was proven correct: the Court of Appeals rejected all of the plaintiffs' claims on appeal and affirmed all of the Probate Court's Orders. *See* 2012 Appeal at 1 and n.1. Thus, the plaintiffs' Complaint indicates that Defendant Brown was keeping abreast of the appellate proceedings, as she correctly described the disposition of the appellate proceedings when asked, since the D.C. Court of Appeals affirmed the Probate Court's Orders in full. *See* 2012 Appeal at 1.

The plaintiffs' third allegation, that Defendant Brown closed the James Jarvis Estate and foreclosed an attack on the Consent Order is, in essence, a disagreement between the plaintiffs and Defendant Brown as to whether such a motion to vacate would have been successful. Defendant Brown, as the Personal Representative, made plain her view that the plaintiffs' allegations regarding the Consent Order lacked merit and, consequently, did not move to vacate the Consent Order on behalf of the James Jarvis Estate. *See* Def. Brown's Reply Pls.' Opp'n Def. Brown's Mot. Dismiss ("Def. Brown's Reply") at 3, ECF No. 29 ("Defendant Brown clearly stated that the fraud allegations made by Plaintiffs appeared 'flawed and unsupportable' and that there was no basis for vacating the Consent Order."). In any event, whether Defendant

Brown exercised her judgment properly with regard to seeking to undo the Consent Order is immaterial, since such a challenge would have been statutorily barred at the time she assumed her duties as personal representative.

D.C. Code § 20-108.01 provides the applicable statute of limitations and statute of repose for probate matters when there are allegations of fraud, specifically providing that "[w]henever fraud has been perpetrated in connection with any proceeding" relating to the probate and administration of decedents' estates, "any person injured thereby may obtain appropriate relief against the perpetrator of the fraud . . . ." D.C. Code § 20-108.01(a). The statute further states that "[a]ny proceeding must be commenced within 2 years after the discovery of the fraud, but no proceeding may be brought against one not a perpetrator of the fraud later than 5 years after the time of the commission of the fraud." *Id.*

The plaintiffs made their allegations that the Consent Order was procured by fraud in their initial Probate Complaint, filed in 2005, referring to Burriss' 2003 actions regarding a 2003 Cadillac and the decedent's personal property. *See* Probate Complaint ¶ 22–23 (alleging Burriss committed fraud regarding her ownership of the disputed 2003 Cadillac and that Defendant Parker should have sued Burriss "for the return of the 2003 Cadillac and other personal property taken from the decedent's apartment"). The plaintiffs do not allege that Defendant Brown actually committed the fraud that led to the Consent Decree, but rather that Burriss, the decedent's daughter, was the fraudster who allegedly "stole" the decedents' 2003 Cadillac, Compl. ¶ 37, and "gained entry to the decedent's apartment to rape, pillage, and plunder it," *id.* ¶ 40. Thus, any claim against Burriss for the alleged theft and fraud in connection with the 2003 Cadillac would have had to have been brought within two years of the plaintiffs' discovery of the fraud, i.e., no later than 2007, and against Defendant Brown as "one not a perpetrator of the

fraud" no "later than 5 years after the time of commission of the fraud," or, more specifically, in 2008. *See* D.C. Code § 20-108.01(a).

The language regarding a non-perpetrator of fraud in D.C. Code § 20-108.01(a) is the classic language of a statute of repose, not a statute of limitation. The Supreme Court held, in *CTS Corp. v. Waldburger*, that statutes of repose "put[] an outer limit on the right to bring a civil action . . . measured not from the date on which the claim accrues, but instead from the date of the last culpable act or omission of the defendant." 134 S. Ct. 2175, 2182 (2014). The difference between a statute of limitation and a statute of repose is apparent in the statute at issue, since the two year limit on commencement of an action is measured from "the discovery of the fraud," i.e., when the claim accrued, but the five year limit is measured from "the time of commission of the fraud." D.C. Code § 20-108.01(a). As the Supreme Court noted, a "statute of repose limit is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." *CTS Corp.*, 134 S. Ct. at 2182 (internal quotation marks omitted). A statue of repose is "an 'absolute . . . bar' on a defendant's temporal liability." *Id.* at 2183 (alteration in original). Since no tolling applies to a statue of repose and the statute is an "absolute bar" to liability, the plaintiffs' claims based on the allegedly fraudulently obtained Consent Order are time-barred as to Defendant Brown, since the Complaint alleges that the fraud occurred in 2003, *see* Compl. ¶¶ 15, 17 (alleging "Burriss forged the signature of the decedent . . . on the title to his then new custom Cadillac Deville" shortly after his death on June 3, 2003), any claim was barred by 2008, and Defendant Brown became the estate's personal representative in 2009. In short, the statute of repose would have barred any effort on her part—even if she thought the claim had merit—to pursue Defendant Parker, who was not the perpetrator of the alleged fraud, for damages in 2009 or later. In any event, since the Probate Court found that

neither Defendant Parker's entry into the Consent Order or decision not to seek its vacatur was a breach of fiduciary duty, *see* Clarification Order at 7, the plaintiffs' claim for breach of fiduciary duty based on Defendant Brown's failure to seek to set aside the Consent Order is legally untenable even if it were not barred by the statute of repose.

None of the allegations against Defendant Brown state a claim upon which relief can be granted since the allegations either refer to facts specifically contradicted by the plaintiffs' filings or are barred by a statute of repose. Consequently, Defendant Brown's motion to dismiss is granted.[26]

### C.    The Plaintiffs' Suit Is Dismissed With Prejudice

In this Circuit, dismissals with prejudice under Rule 12(b)(6) are disfavored and "warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted); *accord Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132–33 (D.C. Cir. 2012) (Kavanaugh, J. concurring) (noting that this Circuit's "decisions have imposed a 'high' bar for Rule 12(b)(6) dismissals with prejudice," and that such "case law on Rule 12(b)(6) dismissals is not fully aligned with the Rules" since "[o]n the contrary, Rule 41(b) contemplates that a Rule 12(b)(6) dismissal ordinarily operates as a dismissal with prejudice, unless the district court in its discretion states otherwise."). This Court must balance the interests of efficiency and the timely resolution of complaints, as required by Federal Rule of Civil Procedure 1, with the liberal pleading standards contained in Rule 15(a) and the "high" *Firestone* standard in this Circuit for dismissal with prejudice. *See Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) ("The standard for

---

[26] Since Defendant Brown's motion is resolved on this ground her alternative reasons for dismissal need not be reached.

dismissing a complaint with prejudice is high."); *cf. In re APA Assessment Fee Litigation*, No. 13-7032, 2014 WL 4377770, at *14, (D.C. Cir. Sept. 5, 2014) (reversing district court's grant of dismissal with prejudice where plaintiffs committed procedural violation but defendants made no showing of prejudice against them). In keeping with these various requirements, dismissal with prejudice is warranted here since the plaintiffs' complaint is barred in its entirety by claim preclusion, issue preclusion, the plaintiffs' own filings, or the applicable standard of repose. *See supra* Part III.A–B. Thus, any amendment of the plaintiffs' complaint would be futile since any claim based on the factual allegations made in the instant complaint would also be barred by preclusion as arising out of the same "transaction or occurrence." *See U.S. Indus., Inc.*, 765 F.2d at 205. Moreover, the plaintiffs have not asked for leave to amend their Complaint and, indeed, have filed the identical Complaint in this District twice. As the D.C. Circuit has held, "it [can] hardly . . . be[] an abuse of discretion for the District Court not to . . . afford[ the plaintiffs] such leave *sua sponte*." *Confederate Memorial Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993). Consequently, the plaintiffs' Complaint is dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss are granted.[27] Since the fatal deficiencies in the plaintiffs' claims cannot be remedied by additional factual pleading, this action is dismissed with prejudice.

The Court notes that, in the plaintiffs' previous action filed in this District, they filed two motions for reconsideration and multiple additional motions and amended memoranda to accompany those motions for reconsideration. *See* Case No. 13-350, *Jarvis v. Parker*, ECF Nos. 24, 28, 31, 36–44. The plaintiffs have continued the practice of filing multiple motions for leave to amend and supplement filings in this action. *See* ECF Nos. 16 (Pls.' Am. Opp'n Def. Parker's

---

[27] The plaintiffs' cross-motion for partial summary judgment is, therefore, denied as moot.

Mot. Dismiss); 19 (Pls.' Mot. Lv. File Suppl. Opp'n); 20 (Pls.' Mot. Lv. File Corrected Am. Opp'n); 25 (Pls. Reply Opp'n Mot. Lv. File); 27 (Pls.' Reply Opp'n Mot. Lv. File); 28 (Pls. Suppl. Opp'n).  The parties are directed to review carefully this Court's Standing Order ¶ 12, ECF No. 9, which states in relevant part that "[m]otions to alter or amend judgment . . . are strongly discouraged. . . . The Court will not entertain a motion that (a) reasserts arguments previously raised and rejected by the Court; or (b) raises for the first time arguments which should have been advanced in the original motion."  The parties' counsel are cautioned that any submission of a motion for reconsideration that does not comply with the aforementioned Order may subject the submitting counsel to sanctions under Federal Rule of Civil Procedure 11(c).

An appropriate Order accompanies this Memorandum Opinion.

Date: September 10, 2014

_____
BERYL A. HOWELL
United States District Judge